## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER M. ALLEN | : | |
| Plaintiff, | : | PRISONER CASE NO. |
| | : | 3:18-cv-297 (JCH) |
| v. | : | |
| | : | |
| CAPTAIN J. KUNKEL, et al. | : | JULY 22, 2018 |
| Defendants. | : | |
| | : | |

## RULING RE: MOTION TO DISMISS (Doc. No. 30)

On February 20, 2018, the plaintiff, Christopher M. Allen ("Allen"), an inmate currently housed at MacDougall-Walker Correctional Institution ("MWCI") in Suffield, Connecticut, filed a complaint pro se pursuant to title 42, section 1983 of the United States Code against three Connecticut Department of Correction ("DOC") employees: Captain J. Kunkel, Correctional Counselor Jessica Bennet, and Correction Officer Irizarry. Complaint ("Compl.") (Doc. No. 1). Allen claimed that the defendants violated his First Amendment rights to free exercise of religion, free speech, and petition for redress of grievances, his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1, his Fifth and Fourteenth Amendment rights to due process, his Fourteenth Amendment right to equal protection of the laws, and various provisions of the Connecticut Constitution, for denying access to a Moorish religious book entitled Nationality, Birthrights, and Jurisprudence. Initial Review Order (Doc. No. 7) at 2-3.

On March 13, 2018, this court issued its Initial Review Order dismissing Allen's claims against Bennet. Id. at 12. The court permitted Allen's religious exercise claims

under the First Amendment to the United States Constitution and Article First, Section 3 of the Connecticut Constitution to proceed against Kunkel and Irizarry in their individual capacities for damages and in their official capacities for equitable relief.  Id.  The court also permitted the RLUIPA claim to proceed against Kunkel and Irizarry but only in their official capacities for equitable relief.  Id.

On March 26, 2018, Allen moved to amend his Complaint and add another religious freedom claim against ten new state officials:  Steven Strom, Attorney O'Brasky, Reverend Williams, Director Karl Lewis, Counsel Supervisor John Aldi, Warden Scott Erfe, Director Michael Bibens, Warden William Mulligan, Deputy Warden Mudano, and Commissary Service Manager Failla.  Ruling Re: Mot. to Amend Compl. (Doc. No. 15) at 2.  The claim against the new defendants was based on their denial of Allen's request to purchase a "fez," a headdress which is an essential component of the Moorish religion.  Id. at 5.  The court permitted the joinder of the ten new defendants and permitted the First Amendment free exercise claim, state constitutional claim, and RLUIPA claim to proceed against them.  Id. at 8.

On May 3, 2018, all twelve defendants moved to dismiss Allen's Amended Complaint ("Am. Compl.") (Doc. No. 16) in its entirety on the ground that Allen failed to exhaust his administrative remedies before commencing suit.  Motion to Dismiss ("Mot. to Dismiss") (Doc. No. 30).  With respect to the claims regarding the denial of the book, the defendants contend that Allen never completed the administrative remedy process as set forth by DOC Administrative Directive 9.6.  Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Doc. No. 30-1) at 14-15.  As for the claims regarding the fez,

the defendants argue that Allen filed his motion to amend the complaint and join the claim against the ten new defendants before completing the administrative remedy process. Id. at 15-17. They attached as exhibits to their motions copies of the DOC Administrative Directives, the administrative remedy requests and appeals written and filed by Allen, an affidavit from Bennet, the Administrative Remedies Coordinator, attesting to the results of all administrative remedy requests and appeals filed by Allen, and records of all MWCI inmate grievances and appeals from June to August 2017. Defs.' Ex. 1-2, A-H (Doc. Nos. 30-2 – 30-3).

In opposition to the motion, Allen does not dispute that he failed to fully comply with the DOC's administrative remedy procedure. See Obj. to Defs.' Mot. to Dismiss ("Pl.'s Obj.") (Doc. No. 34) at 7; see also Am. Compl. at ¶¶ 18-20. Rather, he claims that the failures were the result of his "reasonable misunderstanding" of the procedure or an "innocent misunderstanding of the rules," and the defendants' refusal to answer his written requests prohibits them from raising an exhaustion defense. See Pl.'s Obj. at 5, 8-9. Allen attached to his written objection his own Affidavit, an Affidavit from another inmate stating that he witnessed Allen's attempt to exhaust his claims, and copies of his administrative grievances and appeals. Pl.'s Ex. 1-8 (Doc. No. 34). For the following reasons, the court grants the Motion to Dismiss.

## I.   STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial

plausibility when . . . plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant[s] [are] liable for the misconduct alleged."  Id.

The plausibility standard is not a probability requirement; the complaint must show, not

merely allege, that the plaintiff is entitled to relief.  See id.

"Although all allegations contained in the complaint are assumed to be true, this

tenet is 'inapplicable to legal conclusions.'"  LaMagna v. Brown, 474 F. App'x 788, 789

(2d Cir. 2012) (quoting Ashcroft, 556 U.S. at 678).  See also Amaker v. New York State

Dept. of Corr. Servs., 435 F. App'x 52, 54 (2d Cir. 2011) (same).  Accordingly, the court

is not "bound to accept conclusory allegations or legal conclusions masquerading as

factual conclusions."  Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011)

(quoting Rolon v. Henneman, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation

marks omitted)).  Consequently, "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."  Ashcroft, 556 U.S. at

678 (citing Twombly, 550 U.S. at 555).

"Where . . . the complaint was filed pro se, it must be construed liberally with

'special solicitude' and interpreted to raise the strongest claims that it suggests."  Hogan

v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (quoting Hill v. Curcione, 657 F.3d 116, 122

(2d Cir. 2011)).  Nevertheless, a pro se plaintiff's complaint still must "state a claim to

relief that is plausible on its face."  Mancuso v. Hynes, 379 F. App'x 60, 61 (2d Cir.

2010) (quoting Ashcroft, 556 U.S. at 678).  Therefore, even in a pro se case,

"threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." <u>Chavis v. Chappius</u>, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted).

## II.    BACKGROUND[1]

Allen is a devout Moorish-American and diligently practices his Moorish religion. Am. Compl. at ¶ 22.  The staff at MWCI permits inmates of the Moorish Science religion to practice their faith on an individual basis with books, religious newspapers, audio recordings, and other items.  <u>Id.</u> at ¶ 23.  The staff also allows individual clergy visits on occasion.  <u>Id.</u>

Another Moorish-American inmate gave Allen a list of books on their religion but told him that one of the books, entitled <u>Nationality, Birthrights, and Jurisprudence</u> and written by Bandele El-Amin, was not approved for inmate access by the Media Review Committee ("MRC") at MWCI.  Am. Compl. at ¶ 24.  Captain Kunkel is the head of the MRC, and Irizarry is a committee member.  <u>Id.</u> at ¶ 29.  Allen submitted a written inmate request to "C.T.O." Perry inquiring about the book, and Perry responded by confirming that it was on the MRC's rejection list.  <u>Id.</u> at ¶¶ 25-26; Pl.'s Ex. A (Doc. No. 1-1).

Upon further investigation, Allen learned that the MRC did not approve the book because it "encourages and/or instructs on the commission of criminal activities."  Am. Compl. at ¶ 27.  Offended by the MRC's reasoning, Allen filed a Level-1 grievance on

---

[1] For purposes of this Motion to Dismiss, the court takes the facts alleged in Allen's Amended Complaint, affidavits, and exhibits as true, and it draws all inferences in Allen's favor.  <u>See</u> <u>Distefano v. Carozzi North America, Inc.</u>, 286 F.3d 81, 84 (2d Cir. 2001).

June 8, 2017 claiming that banning the book abridged his right to freely practice his religion.  Id. at ¶ 28; Pl.'s Ex. B (Doc. No. 1-2).  However, Kunkel and Irizarry "ignored [Allen's] grievance" and failed to respond.  Am. Compl. at ¶ 29-30.  On July 10, 2017, Allen filed a Level-2 appeal of his grievance, which went unanswered.  Pl.'s Ex. B.

Shortly after learning about the rejection of the book, Allen submitted another written request to Reverend Williams, the Director of Religious Services for the DOC, seeking to purchase a fez for religious practice.  Am. Compl. at ¶ 32.  A fez is a headdress symbolizing spiritual and physical aspects of life and is an essential component of the Moorish religion.  Id. at ¶ 34 n.2.  On February 12, 2018, Allen received a written correspondence from Director Lewis stating that all ten members of the Religious Review Committee ("RRC"), Strom, O'Brasky, Williams, Lewis, Aldi, Erfe, Bibens, Mulligan, Mudano, and Failla, denied his request to purchase a fez "due to safety and security concerns."  Id. at ¶ 34.  Allen filed a Level-1 grievance regarding the RRC's decision on February 22, 2018, arguing that the fez was an essential component of his religion and that their safety and security concerns were unfounded, but his grievance was denied.  Id. at ¶¶ 35-36.

## III.   ANALYSIS

The defendants claim that the Amended Complaint should be dismissed in its entirety because Allen failed to exhaust his administrative remedies.  With respect to the claims regarding the rejection of the book, they argue that Allen prematurely filed his Level-2 appeal and, when he did not receive a response, he never followed up with a Level-3 appeal.  Defs.' Mem. at 14-15.  Furthermore, they argue that Allen commenced

the cause of action regarding the denial of the fez before exhausting his administrative remedies with the DOC.  Id. at 15-17.  Allen admits that he filed his Level-2 appeal regarding the rejection of the book prematurely, but he argues that a Level-3 appeal was not required.  Pl.'s Obj. at 7-8.  Nevertheless, he claims that he filed his Level-3 appeal on May 7, 2018, over one year after the filing of his Level-2 appeal, that the Level-3 appeal was rejected as untimely, and that his failure to exhaust within a timely manner was "innocuous" and based on "an innocent misunderstanding of the rules . . ." Id. at 8.  As for his claims regarding the fez, Allen argues that his commencement of the cause of action in this court before completing the exhaustion process was based on a reasonable misunderstanding of the exhaustion rule and should be excused.  Id. at 10.

### A. Rule of Exhaustion

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides in relevant part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are available are exhausted."  In enacting section 1997e, Congress sought to afford prison officials time and opportunity to address complaints internally and reduce the quantity, and improve the quality, of prisoner suits.  See Porter v. Nussle, 534 U.S. 516, 524-25 (2002).

Exhaustion of administrative remedies is mandatory for any prisoner challenging the conditions of his confinement.  Id. at 523; Braham v. Perelmuter, No. 3:15-cv-1094 (JCH), 2017 WL 3222532, *8 (D. Conn. Jul. 28, 2017).  Furthermore, the PLRA requires "proper exhaustion," meaning full compliance with administrative procedures and

deadlines.  See Woodford v. Ngo, 548 U.S. 81, 90-93 (2006); Williams v. Correction Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016).  "An 'untimely or otherwise procedurally defective administrative grievance' . . . does not constitute proper exhaustion."  Snyder v. Whittier, 428 F. App'x 89, 91 (2d Cir. 2011) (quoting Woodford, 548 U.S. at 83-84).  To properly exhaust a claim, a prisoner must comply with the prison grievance procedures, including utilizing each step of the administrative appeal process. Id. (citing Jones v. Bock, 549 U.S. 199, 218 (2007)); Jones v. Johnson, No. 3:15-cv-1135 (DJS), 2017 WL 1843692, *4 (D. Conn. May 8, 2017).

However, an inmate need not exhaust administrative remedies that are "unavailable."  Ross v. Blake, 136 S. Ct. 1850, 1858 (2016).  The Supreme Court has identified three circumstances in which "an administrative remedy, although officially on the books, is not capable of use to obtain relief," namely: (1) when a procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use," because "no ordinary prisoner can discern or navigate it"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Id. at 1859-60.

Generally, a motion for summary judgment is a more appropriate mechanism for resolving the issue of exhaustion in a section 1983 suit because failure to exhaust is an affirmative defense and the defendants bear the burden of proving non-exhaustion. See Nicholson v. Murphy, No. 3:02-cv-1815 (MRK), 2003 WL 22909876, *6 (D. Conn.

Sep. 19, 2003) (citing Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999); Reyes v. Punzal, 206 F. Supp.2d 431, 433 (W.D.N.Y. 2002)).  Federal Rule of Civil Procedure 12(d) provides that, "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Indeed, this court has converted motions to dismiss grounded in the plaintiff's failure to exhaust to motions for summary judgment and ordered further briefing from the parties.  See Shaw v. City of New York, No. 08-cv-3997 (SHS) (JCF), 2009 WL 1110789, *4 (S.D.N.Y. Apr. 21, 2009); Torrence v. Pesanti, 239 F. Supp.2d 230, 233-34 (D. Conn. 2003).

However, if it is clear from the pleadings themselves, and the documents attached thereto or incorporated therein, that the plaintiff has failed to exhaust his administrative remedies, then the complaint may be dismissed pursuant to Rule 12(b)(6).  See Nelson v. Deming, 140 F. Supp.3d 248, 264 (W.D.NY. 2015); Turnage v. Dzurenda, No. 3:13-cv-838 (VLB), 2015 WL 4978486, *4 (D. Conn. Aug. 20, 2015); Williams v. Department of Corrections, No. 11-cv-1515 (SAS), 2011 WL 3962596, *5 (S.D.N.Y. Sep. 7, 2011); McCoy v. Goord, 255 F. Supp.2d 233, 249-51 (S.D.N.Y. 2003). In deciding a motion to dismiss, the court may also consult extrinsic materials if "they are integral to [the plaintiff's] claims and [the plaintiff] had notice of that information." Schnall v. Marine Midland Bank, 225 F.3d 263, 266 (2d Cir. 2000); see also Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230–31 (2d Cir. 2016) ("Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the

complaint.") (quoting DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010)). Indeed, "in practice, courts routinely consider extrinsic material on a motion to dismiss for nonexhaustion, without first requiring conversion pursuant to Rule 12(b) or (c)." McCoy, 255 F. Supp. 2d at 250; see also Cole v. Miraflor, No. 02 CIV.9981(RWS), 2006 WL 457817, at *2 (S.D.N.Y. Feb. 23, 2006), aff'd, 305 F. App'x 781 (2d Cir. 2009) ("Because the exhaustion issue is an integral part of a prisoner's claim, the Court may refer to documents outside of the complaint on a 12(b)(6) motion in determining whether a plaintiff exhausted his administrative remedies.").

B. The DOC's Exhaustion Procedure

The administrative remedy process established by the DOC is set forth in DOC Administrative Directive 9.6 ("Directive 9.6").[2] See Shehan, 2017 WL 53691 at *6. If the inmate cannot resolve the issue verbally with the prison official, he must first file an Inmate Request Form (Form No. CN 9601). See Directive 9.6, § 6(A); Jones, 2017 WL 1843692 at *4. If the inmate is not satisfied with the official's response, or if the official fails to respond within fifteen business days, he must submit a Level-1 grievance (Form No. CN 9602) by depositing it in the Administrative Remedies box and attach to the grievance his Inmate Request Form showing that he had attempted to resolve the issue with the official informally. See Directive 9.6, §§ 6(A) & (C); Shehan, 2017 WL 53691 at *6; Jones, 2017 WL 1843692 at *4. The Level-1 grievance must be submitted within thirty calendar days "of the occurrence or discovery of the cause of the grievance," and

_____

[2] Inmate Administrative Remedies, DOC Administrative Directive 9.6 (2013), https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0906pdf.pdf?la=en.

satisfy the same criteria as Inmate Request Forms.  Directive 9.6, § 6(C).  If the inmate is not satisfied with the response to his Level-1 grievance, he may file a Level-2 appeal within five calendar days after receipt of the response.  Id. at § 6(K).  Alternatively, if the Unit Administrator does not respond to the Level-1 grievance within thirty business days after receipt, the inmate may submit a Level-2 appeal within "65 days" from the filing date of his Level-1 grievance.  Id. at § 6(M).

The Level-2 appeal constitutes the final level of appeal for all inmate grievances except for those that (a) challenge department policy, (b) challenge the integrity of the grievance procedure, or (c) exceed the thirty-business-day limit for a Level-2 appeal response.  See id. at § 6(L); Jones, 2017 WL 1843692, *4.  If the inmate's claim satisfies one of these three criteria, he may file a Level-3 appeal within five calendar days of receipt of the Level-2 disposition or, if no Level-2 disposition was received within thirty business days, within "35 days" of filing date of his Level-2 appeal.  See Directive §§ 6(L) & (K); Jones, 2017 WL 1843692 at *4.

C. Allen's Efforts to Exhaust His Administrative Remedies

In this case, the pleadings, the exhibits attached to the Amended Complaint, and the documents incorporated by reference in the Amended Complaint clearly show that Allen failed to properly exhaust his administrative remedies before commencing the present action.  Thus, the court can resolve the exhaustion issue on the defendants' Motion to Dismiss.

Before the defendants even filed their Motion, Allen acknowledged in his

Amended Complaint that he did not fully exhaust his administrative remedies with respect to his claims. He asserts:

> [The defendants'] failure to respond to [his] grievance deprived [him] of the inmate grievance procedure. This willful and deliberate failure to respond to [Allen's] grievance exhibited bias against [his] religious practice on the part of said defendants. Said demonstrable bias by the aforementioned defendants violated state policy of the Administrative Procedure, thus rendering [the] inmate grievance procedure inadequate both as a matter of fact and law such as [Allen's] failure to exhaust his administrative remedy is excusable.

Am. Compl. at ¶¶ 18-20. Allen essentially blames his failure to exhaust his administrative remedies on the defendants' failure to respond to his grievances.

It is apparent from the pleadings and the documents attached thereto that the plaintiff failed to fully comply with Directive 9.6.[3] After learning from C.T.O. Perry that the religious book was on the MRC's rejection list, Allen filed a Level-1 grievance on June 8, 2017. See Am. Compl. ¶ 28; Pl.'s Ex. B at 2. Section 6(I) of Directive 9.6 provides that the Unit Administrator shall issue a written response to the Level-1 grievance "within 30 business days" of receipt of the grievance. However, Allen filed his Level-2 appeal on July 10, 2017, twenty-one business days after the filing of his grievance.[4] Pl.'s Ex. B at 3. Thus, he did not give officials at MWCI a full opportunity to

---

[3] In arriving at this conclusion, the court relies on the grievances and appeals that Allen attached to his Complaint, Amended Complaint, and Objection to Defendants' Motion to Dismiss. Such reliance is appropriate because Allen's Amended Complaint repeatedly refers to these documents and thereby incorporates them by reference. See, e.g., Am, Compl. at ¶¶ 18–21, 28, 30, 35, 36; see also Moore v. Newton, 220 F. Supp. 3d 275, 281 (E.D.N.Y. 2016) ("Documents are deemed incorporated by reference when the complaint refers to them."); Kamholtz v. Yates Cty., 350 Fed.Appx. 589, 592 (2d Cir. 2009) (plaintiff's complaint incorporated defendants' affidavits because it referred to them, even though it did not append them).

respond to his grievance under Directive 9.6 before filing an appeal.  See Woodford, 548 U.S. at 95 (benefits of exhaustion can be realized only if prison officials are given fair opportunity to consider grievance).  Moreover, Allen did not seek a Level-3 appeal from the lack of response to his Level-2 appeal until May 7, 2018, over one year after the filing of his Level-2 appeal.  Pl.'s Ex. 5.  Because section 6(M) of Directive 9.6 clearly provides for a Level-3 review when the inmate does not receive a written response to his Level-2 appeal within thirty business days, Allen cannot be said to have properly exhausted his remedies.

Allen does not dispute that he filed his Level-2 appeal prematurely.  Pl.'s Obj. at 7.  Nonetheless, he argues that the defendants' failure to respond to his Level-2 appeal renders the grievance procedure inadequate and his failure to properly exhaust excusable.  Id.  This argument is without merit.  "[The] mandatory language [in section 1997e(a)] means a court may not excuse a failure to exhaust, even to take special circumstances into account."  Ross, 136 S. Ct. at 1856 (internal quotation marks omitted; see also Torres v. Carry, 691 F. Supp.2d 366, 370 (S.D.N.Y. 2009) (absence of disposition from prison superintendent on inmate's grievance does not exempt inmate from PLRA exhaustion requirements); Wesley v. Hardy, No. 05-civ-6492 (CM), 2006 WL 3898199, *4 (S.D.N.Y. Dec. 12, 2006) ("If a prisoner submits a grievance and receives no response, he cannot be considered to have been actively obstructed or frustrated, as

---

[4] The court takes judicial notice that (1) June 8, 2017, was a Thursday; (2) July 10, 2017, was a Monday; and (3) July 4, 2017, was a state holiday and, therefore, not a business day.

he is free to appeal to the next level of review"). In addition, the fact that his Level-3 appeal, which he filed in May 2018, was rejected by prison officials as untimely further supports the defendants' argument that Allen failed to properly exhaust his administrative remedies. <u>See</u> Pl.'s Ex. 5; Pl.'s Obj. at 8.

As for the claim regarding the denial of the fez, Allen admits that he filed the motion to join this claim with this case before completing the administrative remedy process. Pl.'s Obj. at 10. In particular, he filed his Amended Complaint on April 3, 2018, nearly two weeks before his Level-2 appeal was denied. <u>See</u> Pl.'s Ex. 3. As a result, Allen failed to properly exhaust his remedies with respect to this claim.

Allen contends that the court should, nevertheless, consider the fez-based claim because MWCI officials ultimately denied the grievance and his subsequent Level-2 appeal on the merits of the claim. Pl.'s Obj. at 10; Pl.'s Ex. 3. However, the completion of the exhaustion process after commencement of the action in this court does not excuse Allen's failure to properly exhaust. <u>See</u> <u>Burgos v. Craig</u>, 307 F. App'x 469, 471 (2d Cir. 2008) (subsequent exhaustion after filing of lawsuit insufficient to satisfy PLRA exhaustion requirement); <u>Seuffert v. Pecore</u>, No. 9:13-cv-1303 (FJS/DEP), 2014 WL 4247785, *6 (N.D.N.Y. Aug. 26, 2014) (prison official's final decision on prisoner's grievance after commencement of lawsuit does not cure prisoner's failure to properly exhaust). Thus, it is clear from the Amended Complaint and associated exhibits that Allen failed to properly exhaust his administrative remedies with respect to this claim before joining the claim in this action.

14

Allen relies on Giano v. Goord, 380 F.3d 670 (2d Cir. 2004), and its progeny in support of his argument that his failure to exhaust both claims should be excused because it was based on a "reasonable misunderstanding" of the exhaustion process. Pl.'s Obj. 5, 10.  However, the United States Supreme Court has since overruled Giano and held that a district court has no discretion to create exceptions to an inmate's failure to exhaust administrative remedies beyond those already established by the PLRA. Ross, 136 S. Ct. at 1850, 1856-60.[5]  As stated above, there are only three recognized circumstances under which an administrative remedy procedure is "unavailable" to an inmate under the PLRA and, thus, the failure to exhaust is excused:  (1) when the procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when the procedure is so confusing that no ordinary prisoner could be expected to understand its requirements; and (3) when prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Id. at 1859-60; see also Shehan, 2017 WL 53691 at *6.

With respect to the first exception, Allen's contention that the defendants "fail[ed] to follow their own rules and regulations" by failing to respond to his grievances is without merit.  Pl.'s Obj. at 9.  Directive 9.6 expressly provides for a remedy when correction officials fail to respond to an inmate's Level-1 grievance or Level-2 appeal,

---

[5] Allen also relies on Brownell v. Krom, 446 F.3d 305 (2d Cir. 2006), Williams v. Comstock, 425 F.3d 175 (2d Cir. 2005), and Johnson v. Testman, 380 F.3d 691 (2004), all of which rely on Giano, which the United States Supreme Court later overruled in Ross, 136 S.Ct. 1850.

and Allen admittedly failed to avail himself of those remedies.  See Wesley, 2006 WL 3898199 at *4 ("If a prisoner submits a grievance and receives no response, he cannot be considered to have been actively obstructed or frustrated, as he is free to appeal to the next level of review.").

Allen also does not qualify for the second exception.  Although he argues that he "reasonably misunderst[ood]" his remedies (Pl.'s Obj. 5, 10), he has alleged no facts showing why he (1) chose to file his Level-2 appeal regarding the book prematurely, (2) waited until after the commencement of this suit to file a Level-3 appeal, or (3) moved to join the claim regarding the denial of the fez before pursuing all available administrative remedies.  Thus, the court will not infer from Allen's reasonable misunderstanding that "no ordinary prisoner can discern or navigate" Directive 9.6's requirements.  Ross v. Blake, 136 S. Ct. at 1854; see also Riles v. Buchanan, 656 F. App'x 577, 581 (2d Cir. 2016) (rejecting inmate's contention that Directive 9.6 contains confusing and inconsistent provisions).

As for the third exception, there are no allegations that MWCI officials intimidated, threatened, or otherwise thwarted Allen's efforts to utilize the prison grievance procedure.  Therefore, the court does not agree with Allen that his failure to exhaust his administrative remedies should be excused.  It is clearly apparent from the pleadings, the documents attached thereto or incorporated therein, and Allen's own statements in his Opposition that Allen failed to exhaust his administrative remedies.

Thus, the only remaining issue is whether the court should dismiss the case with prejudice or permit Allen an opportunity to reopen the case after proper exhaustion.

16

"Failure to exhaust administrative remedies is often a temporary, curable procedural flaw." Berry v. Kerik, 366 F.3d 85, 87 (2d Cir. 2004) (quoting Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999)).  Thus, dismissal without prejudice is appropriate when "a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit." Id.  Conversely, dismissal with prejudice is appropriate "where a plaintiff is effectively barred from administrative exhaustion." McCoy, 255 F. Supp. 2d at 252; see also Rivera v. Anna M. Kross Ctr., No. 10 CIV. 8696 RJH, 2012 WL 383941, at *7 (S.D.N.Y. Feb. 7, 2012).

In this case, Allen admits that his Level-3 appeal regarding the rejection of the book was denied as untimely.  See Pl.'s Obj. at 8; Pl.'s Ex. 5.  Because this dismissal renders future proper exhaustion impossible, the court dismisses with prejudice all claims related to the book.

By contrast, Allen properly exhausted his fez-based claims on the day that his Level-2 appeal was denied on the merits (April 16, 2018).  See Pl.'s Ex. 3; see also Defs.' Mem. at 17 (defendants admitting that the denial on April 16 "exhausted plaintiff's available administrative remedies" regarding the fez).  Unlike with his book-based grievance, Allen was not required to file a Level-3 appeal for his fez-based claims. Pursuant to sections 6(K) and 6(L) of Directive 9.6, Level-3 appeals are only permitted for grievances that (1) challenge department policy, (2) challenge the integrity of the grievance procedure, or (3) exceed the thirty-business-day limit for a Level-2 appeal response.  For all other grievances, "Level 2 shall be the final level of appeal."  Directive 9.6, § 6(K).  Thus, a Level-3 appeal was required for Allen's book-based claims

because they challenged the department's "policy and practice" of rejecting <u>Nationality, Birthrights, and Jurisprudence</u>.  <u>See</u> Am. Compl. at ¶¶ 18, 28, 36.  However, Allen could not file a Level-3 appeal for his fez-based claims.  Those claims challenged the prison's decision to deny him a fez, not a department-wide fez policy.  <u>See</u> Pl.'s Ex. 8.  Furthermore, the prison responded to Allen's Level-2 appeal within thirty business days of receiving it.  <u>See</u> Pl.'s Ex. 3 (showing that Allen's Level-2 appeal of his fez-based grievance was received on April 13, 2018, and decided on April 16, 2018).  As such, Allen completed the grievance procedures with respect to his fez-based claims when he received his Level-2 appeal response.

While this Level-2 appeal response was too late to save Allen's current lawsuit, it cures the exhaustion defects in Allen's fez-based claims for future refiling.  <u>See</u> <u>Kasiem v. Switz</u>, 756 F. Supp. 2d 570, 575 (S.D.N.Y. 2010) (noting that dismissal without prejudice is appropriate when proper exhaustion occurs after the complaint has been filed).  Therefore, the court dismisses without prejudice Allen's fez-based claims to allow him the opportunity to refile.

## IV.    CONCLUSION

Based on the pleadings, as well as the documents attached thereto or incorporated therein, the court concludes that Allen failed to properly exhaust all administrative remedies before commencing this action.  Therefore, the court will GRANT the Motion to Dismiss (Doc. No. 30).  The Clerk is directed to enter a judgment of dismissal with prejudice for Allen's claims relating to the book; to enter a judgment of dismissal without prejudice for Allen's claims relating to the fez; and to close this case.

**SO ORDERED** this 22nd day of July 2018 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge